OPINION OF THE COURT
Bellacosa, J.
Appellants are a certified class of approximately 165 retired employees of Consolidated Mutual Insurance Company (CMIC). CMIC gave them continuation group term life, medical, and health insurance coverage upon their retirements. In May 1979, the New York State Superintendent of Insurance, *147 as liquidator of CMIC (Insurance Law § 7405), terminated all CMIC’s “subsisting contracts and other obligations,” including the contractual benefits at issue here. Since 1979, the retirees have been seeking restoration of their benefits on the ground that they were given lifetime rights protected against termination by the liquidator-Superintendent as successor to CMIC (see, Levy v Lewis, 635 F2d 960 [2d Cir]).
A State Supreme Court Referee reported, after a hearing, that the Superintendent had legal authority under the Insurance Law to withdraw the benefits, and specifically stated that language in CMIC’s Employee Guidebook unambiguously reserved CMIC’s right to terminate. Supreme Court then granted the Superintendent’s motion to confirm the Referee’s findings and ruled against the retirees.
In affirming, the Appellate Division applied “principles of contract law” to “determine whether the parties intended to create a nonterminable right to these benefits” (154 AD2d, at 593). The Appellate Division held that the "reservation of rights” clause, together with certain other unidentified sections of the Guidebook, were “sufficient to apprise the claimants” that CMIC could terminate these particular plans (154 AD2d, at 593-594) and "adequately reserve[d] [CMIC’s and hence the liquidator’s] right to terminate” (154 AD2d, at 593 [emphasis added]). The Appellate Division also relied on the unfunded nature of the insurance plans, and on the express mandate of the judicial order of liquidation. We granted leave to appeal and now reverse.
The parties agree that the benefit plans CMIC gave to its retired employees were "welfare benefit” plans under section 3 (1) of the Employee Retirement Income Security Act of 1974 (ERISA) (29 USC § 1002 [1]), but that the retirees were not protected by ERISA’s automatic vesting or minimum funding requirements (29 USC § 1051 [1]; § 1081 [a] [1]). However, as the parties also acknowledge, the inapplicability of ERISA’s vesting umbrella does not resolve this particular controversy.
Employers can contract to provide nonterminable postemployment welfare benefits to retirees irrespective of ERISA’s vesting protection. Retirees seeking to establish entitlement to such benefits by that route bear the initial and extra burden of proving an employer’s nontermination intent. In the absence of ambiguity, resolution of this issue turns on the benefit plan documents (Heidgerd v Olin Corp., 906 F2d 903 [2d Cir]; Moore v Metropolitan Life Ins. Co., 856 F2d 488 [2d *148 Cir]), and the unfunded status of a plan is not determinative or relevant.
CMIC’s Employee Guidebook, a 32-page booklet summarizing a variety of CMIC-provided employee benefits, is the primary plan document relied on by the retirees. With respect to health and medical benefits, the Guidebook states that "[a]fter retirement, the Company will continue your health care program at no cost to you,” and that coverage "remains the same as when [the retiree was] actively working.” The Guidebook also describes the cap placed on maximum lifetime coverage under the major medical plan. With respect to life insurance benefits, the Guidebook states that protection is provided "during your working years and during retirement”, with premiums "paid for by your Company”. Benefits are reduced after retirement to $5,000 as the "final death benefit.”
The "reservation of rights” clause, which is printed on the inside back cover of the Guidebook following several blank pages and is typed in smaller print than the remainder of the booklet, states that "fmjany of the plans and benefits described herein [but nowhere specified, listed or cross referenced], being completely voluntary on the part of the Company, are subject to modification or termination [upon circumstances or occurrences nowhere described] at the considered discretion of the Board of Directors.” (Emphasis added.) No right to terminate is anywhere expressly referenced in conjunction with the medical, health or life insurance benefits described in the body of the Guidebook, which are at issue in this case. The employees and we, as a Court, are left to speculate which of the "many” plans and benefits described in the Guidebook are terminable. The ambiguity is self-evident.
It is not without significance, though hardly determinative, that the reservation of rights clause does not measure up to ERISA’s uniform technical disclosure requirements (29 USC § 1022 [b]; 29 CFR 2520.102-2 [b]). Although some of the specific regulatory requirements first became effective in 1977, years after CMIC first printed its Guidebook and adopted the benefit plans at issue here, CMIC was required to bring its summary plan description into compliance with ERISA’s requirements by that date at the latest. CMIC is in a better position to deal with and suffer for its use of the small print device and for its failure to measure up than the retirees, who have clearly been prejudiced by the liquidator’s judicially authorized unilateral withdrawal of benefits.
*149 Also, the ambiguity in the reservation of rights clause is not eliminated by reference to relevant insurance certificates or master insurance plans. Although CMIC’s Blue Cross/Blue Shield policy contained a termination provision, by its terms it governed only the relationship between CMIC, as the contract holder, and the insurer — not the relationship between CMIC and its retirees. It appears also that the Employee Medical Reimbursement Plan, referenced by the dissent, was neither filed with the Secretary of Labor as required by ERISA (29 USC § 1021 [b]) nor admitted into evidence by the Referee. Finally, the termination language in the group life insurance policy and certificate adds more confusion than light to the resolution of the central issue. As the dissent notes, both the policy and the certificate provide that the insurance terminates "when the Individual ceases to be a member of a class of Individuals eligible for insurance.” Yet retirees as a class are clearly "eligible for insurance” under the plan, and there is no showing in this case that any of the claimant-retirees "ceased to be a member” of that class. Moreover, the policy and certificate also state, somewhat incongruously, that the insurance terminates "upon termination of employment” — which it clearly did not as to the class of retirees in this case who, in fact, received insurance benefits upon retirement and until the liquidator’s decision to withdraw.
The dissent relies heavily on cases in which an employer expressly and unambiguously reserved the right to terminate benefits. Mere language that benefits "will continue” into retirement in the face of an unambiguous reservation of right, of course, is not sufficient to establish mutual intent and understanding that benefits vest at retirement and continue "as when [the retiree was] actively working”. This, however, despite the repetitive accusation of impropriety at our method of analysis, is not such a case.
The dissent also points to language in the Guidebook describing the life insurance conversion privilege, which kicks in "upon termination of the Insurance Plan by the Company.” However, a preceding paragraph states that "[i]f an employee leaves the employ of the Company for any reason other than retirement, the insurance provided by the Company will be cancelled” (emphasis added), seemingly restricting use of the conversion privilege to nonretirees. That reasonable, intelligent and differing minds must resort to microscopic and selective examination of the documents, which the company *150 was in the best position to write clearly and unambiguously in the first place, tellingly rebuts the certainty of the dissent. The termination clause, central to the Appellate Division’s and the dissent’s view of this case and its documents, is unclear and ambiguous.
Inasmuch as the Employee Guidebook and other plan documents, when read together, do not supply an unambiguous answer to the "simple [issue] of contract interpretation”— whether CMIC intended to provide nonterminable life, health and medical benefits to its retired employees — resort to extrinsic evidence is appropriate and necessary (Smith v ABS Indus., 890 F2d 841 [6th Cir]; Moore v Metropolitan Life Ins. Co., 856 F2d 488, supra). The retirees submitted a variety of letters and memoranda from CMIC to them, some of which stated that upon retirement the retiree would remain covered and that life and health insurance benefits would be available "for the rest of [the retiree’s] life,” that the retirees were "100% vested,” and that the benefit "amount will remain unchanged for the rest of your life.” These unequivocal representations, which the dissent ironically finds ambiguous, are allowable because of the threshold ambiguity, and they satisfy the retirees’ unaltered burden of proving that CMIC intended to provide them with nonterminable benefits.
In sum, the Superintendent’s obligations with respect to this controversy are measured by the particular contractual arrangement between CMIC and its retirees and the retirees’ evidentiary submissions. Tested by those factors, there is an insufficient basis to conclude that the liquidator-Superintendent had authority to terminate the retired employees’ contractually nonterminable benefits.
Finally, if there would be any "evisceration” of anything in this case, it would be of the proven protections of these retired employees by sustaining the liquidator’s actions. We have applied correct, fair and principled analysis and law to protect the retirees from that evisceration.
We have considered the other arguments of the parties and conclude they are without merit or do not affect the result and narrow rationale in this case.
Accordingly, the order of the Appellate Division should be reversed, with costs, and claimants-appellants’ cross motion to reject the Referee’s report granted.