NEW WINDSOR VOLUNTEER AMBULANCE CORPS, INC., Plaintiff–Appellee–Cross–Appellant,

v.

George J. MEYERS, Supervisor, Town of New Windsor, sued in his individual capacity, and Town of New Windsor, Defendants–Appellants–Cross–Appellees.

Docket Nos. 04–3292, 04–3534.

United States Court of Appeals, Second Circuit.

Argued: May 23, 2005.

Decided: March 22, 2006.

prejudice" to Gross. *See, e.g., United States v. Bautista,* 23 F.3d 726, 732 (2d Cir.1994).

Stephen Bergstein, Chester, New York (Thornton, Bergstein & Ullrich, Chester, New York, on the brief), for Plaintiff–Appellee–Cross–Appellant.

Richard B. Golden, Goshen, New York (Burke, Miele & Golden, Goshen, New York, on the brief), for Defendants–Appellants–Cross–Appellees.

Before: OAKES, KEARSE, and POOLER, Circuit Judges.

KEARSE, Circuit Judge.

Defendants Town of New Windsor (the "Town") and George J. Meyers, the Town Superintendent, appeal from a judgment entered in the United States District Court for the Southern District of New York following a bench trial before Charles L. Brieant, *Judge*, (A) ruling that defendants had seized ambulances and other property owned by plaintiff New Windsor Volunteer Ambulance Corps, Inc. (the "Ambulance Corps" or the "Corps"), in violation of the Corps's right to due process, and ordering defendants to release that property to the Corps; (B) ordering the Town to pay plaintiff attorneys' fees and costs pursuant to 42 U.S.C. § 1988 in the amount of $56,571.44; and (C) ordering the Town and Meyers as Superintendent to pay plaintiff $33,150 as liquidated contract damages with respect to services prior to a proper termination of the Town's relationship with the Corps. On appeal, defendants contend principally that the district court erred in finding that the Ambulance Corps had a property interest in the ambulances and other detained items, in holding defendants liable for contract damages, and in calculating those damages.

The Ambulance Corps cross-appeals from a postjudgment order of the district court denying its motion for a jury trial with respect to the complaint's request for punitive damages against Meyers in his individual capacity. The district court denied the motion on grounds of lack of jurisdiction, waiver, and lack of merit.

For the reasons that follow, we affirm so much of the judgment as ruled that defendants violated the right of the Ambulance Corps to due process and awarded it equitable relief and attorneys' fees in connection with the due process claim. We vacate so much of the judgment as awarded the Corps contract damages; we vacate the posttrial order denying the Corps's motion for a jury trial on its claim for punitive damages; and we remand for further proceedings on the contract issues and the claim for punitive damages.

## I. BACKGROUND

The present dispute arises out of the February 10, 2004 termination of an arrangement by the Town for ambulance services. The Town is located in Orange County, New York. At all pertinent times

from January 1, 1994, Meyers was Town Supervisor, the Town's highest ranking official, and was chairman of its governing body, the Town Board. The Ambulance Corps is a New York not-for-profit corporation organized to, *inter alia,* "acquire and own ambulances and apparatus for use by the corporation in the voluntary aid and assistance of persons in case of sickness, accident and distress." (Corps Certificate of Incorporation, filed August 22, 1957.)

Many of the events prior to February 2004 are not in dispute and are set forth below as found by the district court in its Findings of Fact and Conclusions of Law dated April 20, 2004 ("District Court April 20 Opinion"), following a bench trial.

A. *The Past Relationship Between the Town and the Ambulance Corps*

Incorporated in 1957, the Ambulance Corps was initially funded through contributions from members of the community; with those funds, it purchased an ambulance and began providing volunteer ambulance services to the Town. Beginning in 1971, the Corps entered into a series of contracts with the Town, in which the Corps agreed to provide, when needed within Town limits, volunteer services of the type customarily provided by a volunteer ambulance corps in New York; the Town agreed to pay the Corps $4,000 for 1971, $3,500 for 1972, and $4,000 for 1974. The contract covering calendar year 1974 also stated that the Town "ha[d] purchased àn ambulance suitable for general[ ]ambulance service which is to be utilized by the [Corps] for the purpose of providing the general ambulance services herein agreed." (Agreement between Town and Ambulance Corps dated March 17, 1974 ("1974 Agreement"), at 1, fourth paragraph.) The Corps agreed to "furnish general ambulance service" within the Town and "to provide trained and experienced personnel to operate and maintain an ambulance to be provided to the [Corps] by the [Town]" (*id.,* second paragraph), and it agreed to purchase collision insurance for that ambulance, as well as liability insurance, thereby "indemnifying the [Town] against liability for the negligent operation of such ambulance and the negligent use of other equipment or supplies" (*id.,* fifth paragraph). The 1974 Agreement further provided that

[t]he [Corps] shall have sole discretion as to the manning and operation of said ambulance and equipment and in making all other judgments and decisions relating thereto, it being the intent and understanding of the parties hereto that the [Corps] is an independent contractor and not an employee or agent of the Town of New Windsor.

(*Id.,* seventh paragraph.)

The last written contract between the Town and the Ambulance Corps was entered into in 1985. In it, the parties "reaffirm[ed] the agreements dated March 31, 1976 and October 21, 1981 except as modified [ ]in" the 1985 Agreement. (Agreement between Town and Ambulance Corps dated January 9, 1985 ("1985 Agreement"), at 1, ¶ 2) The 1976 and 1981 agreements referred to, however, were not presented to the district court as "[t]hese two agreements could not be found." District Court April 20 Opinion at 4 n. 2. The 1985 Agreement, covering the calendar year 1985, provided that "[t]he CORPS agrees to continue to provide competent ambulance service and personnel that it has always provided to the TOWN" (1985 Agreement at 1, ¶ 2). That agreement stated that "due to the increased cost of operating the ambulance service within the TOWN, an increase in the amount of consideration is warranted" (*id.* at 1, third "WHEREAS" clause) and provided that the Town was to pay the Corps $10,500 for the year 1985

(*see id.* ¶ 3). The Town also agreed to provide all gasoline required for the operation of the ambulance vehicles until further order of the Town Board. (*See id.* at 1–2, ¶ 4.)

In August 1990, the Town established the New Windsor Ambulance District (the "Ambulance District" or "District"), drawn to exclude an international airport within the Town. The penultimate "WHEREAS" clause of the Town Board's order creating the Ambulance District stated that "said District [was] to be established only to provide ambulance service within the District through a contract with the New Windsor Volunteer Ambulance Corps[ ], Inc." *In the Matter of the Proposed Establishment of the New Windsor Ambulance District in the Town of New Windsor, in the County of Orange, New York* at 3 (Final Order Establishing the District, Aug. 9, 1990.)

As noted above, the last written agreement between the Town and the Ambulance Corps covered calendar year 1985. Thereafter, the Ambulance Corps continued to provide services to the Town (after 1990, to the Ambulance District), and the Town continued to pay the Ambulance Corps—without written contracts. To request payment, the Corps submitted a detailed budget request to the Town each year; the Town reviewed the requests and approved payments to the Corps. By 2001, the annual payments had risen to $211,400, and that was the amount the Town paid the Corps in 2003.

Out of the payments it received from the Town, the Ambulance Corps purchased the vehicles, equipment, and supplies it needed to provide ambulance service to the District. The Ambulance Corps held title to the vehicles, and it purchased the necessary insurance coverage. As of early 2004, the Corps had four such ambulances and four other vehicles. At that time, those eight vehicles, along with an ambulance that had been funded by a 1994 Town bond issue and to which the Town held title, were housed in a building owned by the Town (the "Town Garage").

B. *The Termination of the Relationship*

For the year 2004, the approved Town budget provided that the Ambulance Corps was to be paid $221,000. On February 10, 2004, however, the Town locked the Ambulance Corps out of the Town Garage and sent the Corps a letter terminating the relationship between the Corps and the Town. The letter stated, in pertinent part, as follows:

The Town of New Windsor hereby notifies you of its determination to terminate immediately the services of the New Windsor Volunteer Ambulance Corps. The safety and health of this municipality are jeopardized by certain aspects of NWVAC's inability or failure to perform requisite emergency services.

While the Town recognizes and appreciates the outstanding efforts of dedicated NWVAC individuals over the past years, the fact remains that the organization has failed to rise to the required level of service for the municipality in the current environment.

In that regard the Town has become aware of the NWVAC failure to meet Advanced Life Support certification and Vehicle and Traffic licensing requirements; failure to control use of emergency vehicles; and failure to field a crew or crews at all times.

Therefore, the Town is taking immediate possession of the Town facility used by NWVAC, as well as all Town vehicles and equipment operated by NWVAC.

I request that you coordinate with Police Lieutenant Richard Hovey ... to arrange to retrieve personal items and organizational items that do not belong

to the Town or the Town's Ambulance District.

(Letter from George J. Meyers to Captain Cynthia Combest dated February 10, 2004) ("Town Termination Letter"). In addition, the Town refused to make any payments to the Corps for the calendar year 2004.

The Ambulance Corps, through its attorney, promptly complained to the Town of the seizure and withholding of the vehicles to which the Corps had title, along with other equipment and materials. (*See* Letter from Helen G. Ullrich to George J. Meyers dated February 12, 2004.) In response, the Town, through its attorney, took the position that *"[n]o contract for services existed* between the Town and New Windsor Volunteer Ambulance Corps" (Letter from Philip A. Crotty to Helen G. Ullrich dated February 17, 2004 ("Second Town Letter"), at 1 (emphasis added)), and that the seized property, including "vehicles, equipment, radios, cell phones, and pagers," belonged to the Town because the Corps "operated on tax revenues from the Town's ambulance district" and because such equipment was "purchased pursuant to line item authorization in the Town budget" (*id.*).

## C. *Proceedings in the District Court*

On February 26, 2004, the Ambulance Corps commenced the present action under 42 U.S.C. § 1983, alleging principally that defendants had seized Corps property without giving it any notice or opportunity to be heard, in violation of the Fourth and Fourteenth Amendments to the Constitution. The complaint also alleged state-law claims for, *inter alia*, unjust enrichment. It demanded a jury trial and requested equitable and legal relief, including the return of Corps property, compensation for monetary losses, punitive damages against Meyers in his individual capacity, and such other relief as the court deemed just and proper.

In conjunction with its complaint, the Ambulance Corps sought a temporary restraining order and a preliminary injunction requiring the Town immediately to release Corps property. The district court declined to order any immediate action but ordered the parties to attend a hearing on the injunction motion on March 4. At that hearing and its continuation on March 18, the court received testimony from four witnesses, principally on the issue of the ownership of the four ambulances and four other vehicles claimed by the Corps and withheld by the Town.

At the close of the March 18 session, the district court stated that it was

consolidating the trial of the merits with the issue of whether a preliminary injunction should be granted pursuant to Rule 65(a).

The Court understands that there may be an issue in the case about possible damages for *detinuit,* and as to that, anybody would be entitled to a jury trial, but really I think that would be so trivial that it shouldn't occupy anybody and presumably you could work that out yourselves; but if you can't, the Court wants to make clear that its consolidation is not intended to deprive anybody of the right to a jury determination as to any issues which are not equity in nature.

(Hearing Transcript, March 18, 2004 ("March 18 Tr."), at 79.) After setting a schedule for posttrial briefs, the court reiterated that, with respect to the consolidation of the preliminary injunction hearing with trial of the merits, "I want to make it clear in doing it that I'm doing it without prejudice to anybody's right to a jury trial as to money issues, money damage issues." (*Id.* at 80.)

## D. *The District Court's Rulings*

Following the submission of posttrial briefs, the district court issued its findings of fact and conclusions of law. The court found that the "initial relationship in 1972 between the Town and the Corps was a contractual relationship" and that, although "[n]o new written contracts were executed between the parties after 1985, ... the relationship continued essentially as it had been in the past." District Court April 20 Opinion at 6. It noted that in establishing the Ambulance District, the Town had expressly recognized the existence of a contract between the Town and the Corps and had "expresse[d] a then existing intention to continue to operate by contract." *Id.* at 8. Finding no evidence that the contractual relationship had been terminated or changed to a fiduciary relationship, the court concluded that the Town and the Corps had remained parties to a contract for the Corps's services, *see id.,* the nature of which was "established by documents, custom and practice" over the years, *id.* at 10.

Although the Town argued that the Corps was merely an arm of the Town, and hence that the vehicles and other items at issue were the property of the Town, the court rejected that argument. The court found that unlike a Town department, the Corps was not, for example, required to return to the Town any funds that were not expended by the Corps at the end of a calendar year. The court also found that the Town's oversight of Corps activities was rather limited. While the Town paid the Corps once annually, and it periodically reviewed the Corps's expenditures for procedural irregularities, the Town did not pay the Corps's bills or otherwise actively involve itself in the Corps's business decisions. *See id.* at 6–8.

The court also noted that "[n]one" of the eight vehicles in question "appear on the property records of the Town." *Id.* at 8. Those vehicles had been purchased by the Ambulance Corps and insured by the Corps in its own name, and title was registered in the name of the Corps. The court pointed out that "[t]he registered title of a New York Motor Vehicle is by statute presumptive evidence of its ownership. New York V & T Law § 2018(c)," District Court April 20 Opinion at 9, and it found no evidence, such as competitive bidding or governmental procurement contracts, to rebut that presumption, *see id.* at 9. Rather, the presumption that the vehicles to which the Corps held title in fact belonged to the Corps was strengthened by the Town's treatment of the ambulance that had been purchased with the proceeds of the 1994 Town bond issue. The district court observed that the Town had taken title to that publicly funded ambulance in its own name and found that the "[f]ailure of the Town to require the registration and title of the other ambulances and vehicles in its name cannot be ascribed to inadvertence in light of its affirmative conduct" in purchasing, registering, and retaining title to the 1994 ambulance, *id.* at 10.

The district court found that the Ambulance Corps's use of Town funds to purchase the ambulances, other vehicles, and other equipment was a result of the continuation of the contract for ambulance services, and it concluded that "the single check given to the Ambulance Corps should be treated as a contract payment for the services to be rendered during the calendar year," a payment out of which the Ambulance Corps funded both its capital and operating expenses. *Id.* at 11. The court rejected the Town's contention that furnishing Town funds to purchase the ambulances constituted the making of a gift and hence was prohibited by the New York State Constitution. The court agreed that, in principle, a municipality

"cannot give or lend property to a private corporation, by reason of Article VIII Section 1 of the New York Constitution ..., and [that] one who takes such a gift with notice must return it." District Court April 20 Opinion at 12. But the court concluded that

> [t]he New York Constitution does not forbid contracting for a service, and this is exactly what has been done since 1972 [sic], and what was contemplated in the order creating the Ambulance District. That the Town examined the needs of the Corps and fixed the amount paid consistently therewith is not inconsistent with a contract relationship. Lawfulness is presumed; a contract was expressly permitted by the New York Town Law, § 184. A gift or loan of vehicles is not authorized. Unlawful conduct on the part of the Town for so many years is not to be presumed.

District Court April 20 Opinion at 12. The court concluded that the vehicles and the other items purchased by the Ambulance Corps and detained by the Town, including stretchers, oxygen tanks, defibrillators, portable radios, pagers, and other materials, were owned by the Ambulance Corps.

Having determined that that property was owned by the Ambulance Corps, the court also found that the Town had seized that property without affording the Corps due process. It found that "[t]here was no notice given of the taking and no pre-deprivation hearing ...." *Id.* at 13. The court found that Meyers, who took the challenged actions, was "a policymaking official for the Defendant Town," *id.* at 2; that the actions of Meyers were acquiesced in by the Town Board, *see id.* at 2–3; and that Meyers's actions were thus "actions of the Town itself," *id.* at 2. Accordingly, the court found that "[t]he taking was neither random nor unauthorized," and, there having been no predeprivation notice or op-

portunity to be heard, the taking violated the Ambulance Corps's right to due process. *Id.* at 13.

The court ruled that the Ambulance Corps was entitled to the immediate return of the seized property. The court found that the Corps was not entitled to damages on the due process claim because it had "not proved any damages or loss from the detention of the property during the relatively brief ... unlawful detention since February 10, 2004." *Id.*

The court found, however, that the Ambulance Corps was entitled to compensation for services rendered in 2004 and to some payment in lieu of notice of termination. The court stated:

> While the Town has the absolute right to terminate its relationship with the Corps on reasonable notice for good cause or for no reason at all, and it has apparently done so, Plaintiff at the very least was entitled to the customary two weeks' notice of termination of the relationship, and also to its *pro rata* share of the contract payment for 2004. This is fifty-five days, or fifteen percent of $221,000, amounting to $33,150.00.

*Id.*

Judgment was entered ordering defendants to release to the Ambulance Corps all of the property seized in violation of its due process rights, *see* Judgment dated May 7, 2004, entered May 10, 2004 ("Judgment"), at 1; ordering the Town to pay the Corps "its reasonable attorneys' fees and costs pursuant to 42 U.S.C. Sec.1988 payable out of the Town General Fund in the amount of $56,571.44," Judgment at 2; and ordering the Town, and Meyers in his official capacity, to pay the Corps "$33,150 in liquidated contract damages payable out of the funds of the Ambulance Service Special District," *id.*

On May 14, 2003, the Ambulance Corps filed a motion pursuant to Fed.R.Civ.P. 59(a)(2) for a partial new trial, to wit, a jury trial on the issue of punitive damages, which the complaint had requested against Meyers in his individual capacity. The district court, in a Memorandum and Order dated June 8, 2004 ("June 8 Order"), held that it lacked jurisdiction to decide that motion because on June 4, 2004, defendants had filed a notice of appeal, removing jurisdiction of the case to the court of appeals. As discussed more fully in Part II.C. below, the district court added that if it had jurisdiction, it would deny the motion on the grounds that the Corps had waived its right to have such a trial and that Meyers's conduct did not warrant an award of such damages.

## II. DISCUSSION

Defendants appeal from the Judgment awarding the Ambulance Corps equitable relief and attorneys' fees on its due process claim and damages on its contract claim. The Ambulance Corps cross-appeals from the June 8 Order denying its motion for a jury trial on the issue of punitive damages. For the reasons that follow, we find merit only in the cross-appeal and in so much of defendants' appeal as challenges the award of contract damages.

### A. The Town's Challenges to the Due Process Rulings

Defendants challenge the district court's ruling that they deprived the Ambulance Corps of its property without due process, arguing principally (1) that the ambulances and other property detained by the Town belong to the Town, not to the Ambulance Corps, (2) that what is at issue is a simple contract right, not a constitutionally protected property right, and (3) that even if property rights of the Corps are at issue,

the Corps was afforded all the process that was due. They also challenge the award of attorneys' fees on procedural grounds. We reject all of these challenges.

### 1. Ownership of the Ambulances and Other Equipment

The Town contends that the district court erred in finding that the Corps was the owner of the seized ambulances and equipment, arguing (a) that the contracts did not provide that the Corps was to own the ambulances, and (b) that even if the contracts allowed the Corps to own the ambulances, those contracts are unenforceable because they violate the New York State ("State") Constitution's provision prohibiting municipalities from making gifts of money or property to private corporations.

■ The question of who owns a given item of personal property is a mixed question of law and fact. *See, e.g., Iselin v. Starin,* 144 N.Y. 453, 460, 39 N.E. 488, 489 (1895); *McKee v. Jessup,* 62 A.D. 143, 144, 70 N.Y.S. 796, 797 (1st Dep't 1901). To the extent that the determination of ownership turns on the interpretation of provisions of a contract, the existence and terms of the contract are questions of fact, but the effect of those terms on ownership is strictly a question of law if the provisions are unambiguous, for under New York law, the interpretation of an unambiguous contract is a question of law, *see, e.g., K. Bell & Associates v. Lloyd's Underwriters,* 97 F.3d 632, 637 (2d Cir.1996); *Teitelbaum Holdings, Ltd. v. Gold,* 48 N.Y.2d 51, 56, 421 N.Y.S.2d 556, 559, 396 N.E.2d 1029 (1979). However, if the contract is ambiguous and relevant extrinsic evidence as to its meaning is available, its interpretation is a question of fact for the factfinder. *See, e.g., Revson v. Cinque & Cinque, P.C.,* 221 F.3d 59, 66 (2d Cir.2000); *Consarc Corp. v. Marine Midland Bank,*

*N.A.,* 996 F.2d 568, 573 (2d Cir.1993); *Rothenberg v. Lincoln Farm Camp, Inc.,* 755 F.2d 1017, 1019 (2d Cir.1985); *In re Consolidated Mutual Insurance Co.,* 77 N.Y.2d 144, 150, 565 N.Y.S.2d 434, 436, 566 N.E.2d 633 (1990). Further, under New York law, "the existence of an implied contract is" likewise "a question of fact." *Shapira v. United Medical Service, Inc.,* 15 N.Y.2d 200, 210, 257 N.Y.S.2d 150, 157, 205 N.E.2d 293 (1965).

■ In interpreting an ambiguous contract provision, the factfinder "should, when possible, apply the same measure as the parties have applied in performing their obligations." *William C. Atwater & Co. v. Panama R. Co.,* 255 N.Y. 496, 501, 175 N.E. 189, 191 (1931); *see, e.g., Old Colony Trust Co. v. City of Omaha,* 230 U.S. 100, 118, 33 S.Ct. 967, 57 L.Ed. 1410 (1913) (of "great" significance is the "practical interpretation of a contract by the parties to it for any considerable period of time before it comes to be the subject of controversy"). "Where an agreement involves repeated occasions for performance by either party with knowledge of the nature of the performance and opportunity for objection to it by the other, any course of performance accepted or acquiesced in without objection is given great weight in the interpretation of the agreement." *Restatement (Second) of Contracts* § 202(4) (1979); *see also Brooklyn Life Insurance Company of New York v. Dutcher,* 95 U.S. 269, 273, 24 L.Ed. 410 (1877) ("There is no surer way to find out what parties meant, than to see what they have done.... Parties in such cases often claim more, but rarely less, than they are entitled to.").

■ When the district court as factfinder has considered relevant extrinsic evidence in connection with a contract provision that was not unambiguous, its findings as to the meaning of the provision are findings of fact that may not properly be disturbed unless they are "clearly erroneous." Fed.R.Civ.P. 52(a); *see, e.g., In Time Products, Ltd. v. Toy Biz, Inc.,* 38 F.3d 660, 665 (2d Cir.1994); *Marine Transport Lines, Inc. v. International Organization of Masters,* 878 F.2d 41, 45 (2d Cir.1989), *cert. denied,* 493 U.S. 1022, 110 S.Ct. 724, 107 L.Ed.2d 743 (1990); *Network Publishing Corp. v. Shapiro,* 895 F.2d 97, 99 (2d Cir.1990). "Where there are two permissible views of the evidence, the factfinder's choice between them cannot be clearly erroneous." *Anderson v. Bessemer City,* 470 U.S. 564, 574, 105 S.Ct. 1504, 84 L.Ed.2d 518 (1985).

■ Various sets of legal principles may govern the determination of ownership under an established set of facts. As a matter of New York law, the certificate of title of a vehicle is presumptive evidence of the vehicle's ownership. *See* N.Y. Veh. & Traf. Law § 2108 (McKinney 1996). "[T]his presumption of ownership is not conclusive, and may be rebutted by evidence which demonstrates that another individual owned the vehicle in question." *Aronov v. Bruins Transportation, Inc.,* 294 A.D.2d 523, 524, 743 N.Y.S.2d 131, 133 (2d Dep't 2002) (internal quotation marks omitted).

■ The New York State Constitution, invoked by the Town, provides that no municipality "shall give or loan any money or property to or in aid of any individual, or private corporation or association, or private undertaking." N.Y. Const. Art. 8, § 1. This anti-gift provision was "intended to curb raids on the public purse for the benefit of favored individuals or enterprises furnishing no corresponding benefit." *Taylor v. McGuire,* 100 Misc.2d 834, 837, 420 N.Y.S.2d 248, 251 (Sup.Ct. N.Y.Co.1979) (internal quotation marks omitted). The prohibition on gifting requires that a municipality "expend its

funds only to meet its lawful obligations incurred as a result of the performance of its governmental functions." *Corning v. Village of Laurel Hollow,* 48 N.Y.2d 348, 353, 422 N.Y.S.2d 932, 935, 398 N.E.2d 537 (1979). Notwithstanding that prohibition, New York law allows a town to "[c]ontract with one or more individuals, municipal corporations, associations, or other organizations to supply, staff and equip emergency medical service or ambulance vehicles suitable for such purposes and operate such vehicles for the furnishing of prehospital emergency treatment." N.Y. Gen. Mun. Law § 122–b(1)(c) (McKinney Supp. 2004).

We review the district court's conclusions on questions of law *de novo. See, e.g., Schermerhorn v. Local 100, Transport Workers Union of America,* 91 F.3d 316, 322 (2d Cir.1996). The matter of whether a given agreement is barred by law is, of course, a question of law.

■ In the present case, we see no clear error in any of the district court's factual findings that, as a matter of contract, the Corps owned the ambulances and other seized equipment. Although the last written contract between the parties was in 1985, and the 1985 Agreement was silent as to the ownership of the ambulances, the court was amply justified in relying on the parties' course of conduct over the years in order to determine their intent as to who would own the ambulances and other vehicles. Until their seizure in February 2004, not one of the eight vehicles in question had been claimed by the Town as Town property at any time. Rather, the parties' conduct prior to the present controversy included the purchase and operation of each of the four ambulances and four other vehicles exclusively by the Corps; the registering of title to each of those eight vehicles in the name of the Corps; the insuring of each of those eight vehicles in the name of the Corps; and the Town's not listing any of those vehicles on the Town's property inventory.

Further, the manner of the vehicles' procurement supports the district court's finding that the parties understood the vehicles were to be owned by the Corps, not the Town. The vehicles were not acquired through a State contract or a competitive bidding process; rather, each year, the Corps submitted a "budget request" to the Town that included both capital and operating expenses. It is undisputed that the Town considered these requests item by item; but after a budget was approved, the Town simply made a lump sum payment to the Corps. Further, the Town classified these budget items as contractual expenses, not as purchases for the Town or donations to the Corps.

The court inferred that placement of title to the ambulances in the name of the Corps was in accordance with the parties' intent that the Corps own the vehicles, and not merely an oversight on the part of the Town. It drew this inference in part from the above evidence and in part from the fact that when the Town purchased an ambulance with funds raised through the 1994 public bond issue, the Town took title to that ambulance in its own name. The court's inference was permissible and hence cannot be termed clearly erroneous.

Further, the Corps had total control of its accounts, and it could use the funds paid by the Town to purchase equipment as it saw fit. The Town did not pay the Corps's bills; and, aside from reviewing the Corps's expenditures 4–6 times a year for procedural irregularities, the Town did not actively involve itself in the Corps's business decisions. Finally, unlike funds held by Town departments, any surplus funds remaining in the Corps's account at the end of the year did not revert to the

Town; they instead remained the property of the Corps.

In sum, the record furnishes ample support for the inferences that the Town paid the Corps pursuant to a contract for services that could not be available without expensive equipment; that the moneys paid were intended to and did become the property of the Corps; and that the Corps thus purchased the ambulances and other equipment out of its own funds and thereby owned the vehicles and equipment. The trial court's finding that as a matter of contract, the parties intended that the Corps would own the ambulances and other equipment is well supported by the evidence.

■ Nor do we see any error in the district court's conclusion that the contract pursuant to which the Corps was meant to own the vehicles was not in violation of New York law. Although, as set forth above, the State Constitution forbids municipalities to make gifts to private entities, State law expressly authorizes municipalities to "[c]ontract with" independent entities "to supply ... emergency medical service or ambulance vehicles suitable for such purposes," N.Y. Gen. Mun. Law § 122–b(1)(c) (emphases added). Interpreting these provisions, the State's Comptroller, its highest-ranking fiscal officer, has opined that although "the provisions of section 122–b(1)(c) may not be utilized as a means of circumventing the [State Constitution's] prohibition against gifts of municipal money," Op. 80–702, 1980 N.Y. St. Comp. 193, 193, 1980 WL 8103, at *1 ("State Comptroller's Nov. 1980 Opinion"), § 122–b(1)(c) does allow a municipality to pay an ambulance corps sufficient sums to permit the ambulance corps to purchase corps ambulances and other vehicles. Responding to an inquiry from a county that planned to contract with a volunteer ambu-

lance corps that would "provide its own vehicles," the Comptroller opined that

> *[i]n determining the amount which it will pay, we believe a municipality may consider such things as the corps' need to replace its vehicles,* supplies and/or equipment; *the corps' need for new,* different and/or additional equipment, supplies and *vehicles;* and the corps' ability to raise money from donations.
>
> ... [I]t follows from the foregoing that *an ambulance corps may use the money paid by the county to replace and/or purchase vehicles ... which are no longer repairable ... and to purchase needed new, different and/or additional vehicles ....*

State Comptroller's Nov. 1980 Opinion at *1 (emphases added).

We conclude that the district court did not err in concluding that the contracts for emergency medical services under which the Town paid the Corps sums sufficient for the Corps to purchase the ambulances and other equipment needed for the rendering of such services did not contravene State law, and that the eight vehicles, along with other equipment, were owned by the Corps.

### 2. The Nature of the Interest Asserted in the Due Process Claim

■ The Due Process Clause protects against deprivations of, *inter alia,* "property," without due process of law. Defendants argue that there could not have been a due process violation because—notwithstanding their initial stance that "*[n]o contract for services existed* between the Town and New Windsor Volunteer Ambulance Corps" (Second Town Letter at 1 (emphasis added))—they now contend that "this dispute is a simple contract dispute" (Defendants' brief on appeal at 10), rather than a dispute over a property interest that is protected by the Due Process

Clause. In support of this contention, defendants cite only *S & D Maintenance Co. v. Goldin*, 844 F.2d 962 (2d Cir.1988) ("*S & D Maintenance*"). We find that case inapposite.

In *S & D Maintenance*, the plaintiff ("S & D") had entered into contracts with the City of New York to maintain the City's on-street parking meters for two consecutive two-year periods; the City thereafter refused to pay three invoices, submitted by S & D for interim payments, pending the outcome of a criminal investigation into the circumstances under which S & D had obtained the first of the contracts. As a result, S & D informed the City that S & D would suspend performance under the second contract; the City thereafter terminated the second contract. S & D sued the City for denial of due process, contending that both the withheld moneys and the second contract itself were property within the meaning of the Due Process Clause. We rejected those contentions. We noted that " '[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it.' " 844 F.2d at 965–66 (quoting *Board of Regents v. Roth*, 408 U.S. 564, 577, 92 S.Ct. 2701, 33 L.Ed.2d 548 (1972)). We upheld the grant of summary judgment dismissing the complaint because S & D had no legitimate claim of entitlement either to the continuation of its contract or to prompt interim payments for past services.

The present case bears little resemblance to *S & D Maintenance*. The Ambulance Corps did not assert, as did S & D, that it had a property right to the continuation of its contractual relationship with the Town. Nor did the Corps suggest that money unpaid for the period January 1 to February 10, 2004, was the subject of

its due process claim. Rather, the Corps asserted that it owned the ambulances and other vehicles and equipment that were seized and withheld by the Town. Given the district court's ruling, upheld above, that the Corps owned the seized items, the Town's contention that no protectable property interest was at stake here is meritless. The district court correctly ruled that the tangible physical assets owned by the Corps constituted property within the meaning of the Due Process Clause.

### 3. *Defendants' Contention that Due Process Was Afforded*

 The Town also contends that even if the ambulances and other equipment were property of the Corps protected by the Due Process Clause, the Corps received all the process it was due because it could have brought a proceeding under Article 78 of New York's C.P.L.R. or "a plenary contract action" after the seizure (Defendants' brief on appeal at 12 n. 4). We disagree.

 In general, "the Constitution requires some kind of a hearing *before* the State deprives a person of liberty or property." *Zinermon v. Burch*, 494 U.S. 113, 127, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990) (emphasis in original); *see also Gudema v. Nassau County*, 163 F.3d 717, 724 (2d Cir.1998) ("Ordinarily, the Due Process Clause requires that the state not deprive an individual of a significant liberty or property interest without affording notice and some opportunity to be heard *prior to the deprivation*." (emphasis added)). Although postdeprivation remedies can provide constitutionally sufficient process in circumstances where the deprivation was caused by a state agent's conduct that was "random" and "unauthorized," *Zinermon*, 494 U.S. at 130, 110 S.Ct. 975; *see, e.g., Hudson v. Palmer*, 468 U.S. 517, 532, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984); *Parratt*

*v. Taylor,* 451 U.S. 527, 541, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), on the rationale that the state cannot reasonably anticipate such conduct, *see, e.g., Zinermon,* 494 U.S. at 129, 110 S.Ct. 975, the principle does not apply where the deprivation was caused by high-ranking officials who had "final authority over the decision-making process," *Dwyer v. Regan,* 777 F.2d 825, 832 (2d Cir.1985), *modified,* 793 F.2d 457 (2d Cir.1986); *see, e.g., DiBlasio v. Novello,* 344 F.3d 292, 302 (2d Cir.2003), *cert. denied,* 541 U.S. 988, 124 S.Ct. 2018, 158 L.Ed.2d 492 (2004); *RR Village Ass'n v. Denver Sewer Corp.,* 826 F.2d 1197, 1204 (2d Cir.1987).

Here, the district court found that the seizure was ordered not by any low-ranking employee, but by Meyers, *see, e.g.,* District Court April 20 Opinion at 9, who was the Town's highest ranking official, chairman of the Town's governing body, and a "policymaking official," *id.* at 2. Meyers's actions cannot be termed random or unauthorized; his actions with respect to the Corps were the "actions of the Town itself." *Id.* Accordingly, the Corps was entitled to notice and an opportunity to be heard before the Town seized its property. It received neither.

We conclude that the district court correctly ruled both that the Town seized property owned by the Corps and that the Town's failure to provide notice and a hearing before seizing Corps property violated the Corps's right to due process.

### 4. *Attorneys' Fees*

■ Finally, the Town makes a terse half-sentence procedural challenge to the district court's award of attorneys' fees under 42 U.S.C. § 1988 to the Ambulance Corps as the prevailing party on its § 1983 claim for denial of due process, arguing

that the award should be vacated because the Town was not given an opportunity to respond to the fee motion. (*See* Defendants' brief on appeal at 13.) We see no basis for reversal of that award.

■ Rule 54(d)(2), which governs motions for awards of attorneys' fees that are not an element of the damages to be proven at trial, provides, in pertinent part, that with respect to a motion for attorneys' fees "the court shall afford an opportunity for adversary submissions" *"[o]n request of a party."* Fed.R.Civ.P. 54(d)(2)(C) (emphasis added). This subparagraph of the Rule

> assures the parties of an opportunity to make an appropriate presentation with respect to issues involving the evaluation of legal services. In some cases, an evidentiary hearing may be needed, but this is not required in every case.

Fed.R.Civ.P. 54 Advisory Committee Note (1993). The district court of course has discretion to order a response and/or to order an evidentiary hearing even if there is no request. But if the party against which attorneys' fees are sought has not made any request for an opportunity to respond, the Rule does not require that such an opportunity be afforded. *See, e.g.,* 10 *Moore's Federal Practice—Civil* ¶ 54.155[2] (3d ed. 2003) ("If the fee movant properly carries the burden of establishing the right to the fee and its amount, the burden shifts to the fee opponent to contest the fee with its own evidentiary submissions. Upon the 'request of a party or class member,' the court is obliged to allow adversary submissions.") (quoting Fed.R.Civ.P. 54(d)(2)(C)).

In the present case, the Ambulance Corps's motion for an award of attorneys' fees was made on April 27, 2004. In its brief on appeal, the Town does not represent that it made any request for an opportunity to respond to the motion, nor

does the record suggest that it did so. The fee motion was granted by the court in the Judgment on May 7. The record contains no indication that the Town thereafter asked the court to reconsider that portion of the Judgment, either on the ground that the Town had wished to respond to the motion or on the ground that there was any flaw in the award. Nor has the Town on this appeal suggested that there was any defect or abuse of discretion in the award. In light of all the circumstances, we decline to vacate the district court's award of fees to the Corps on its § 1983 claim.

### B. The Town's Challenges to the Award of Contract Damages

With respect to the Corps's claim for unjust enrichment, the district court found that the Corps was entitled to "its *pro rata* share of the contract payment for 2004," *i.e.,* the 41 days in 2004 preceding and including February 10, the date of the Town's Termination Letter. District Court April 20 Opinion at 13. In addition, the court found that although the Town had an absolute right to terminate its relationship with the Corps at any time, with or without cause (a finding not challenged on appeal by the Corps), the Corps "at the very least was entitled to the customary two weeks' notice of termination of the relationship." *Id.* For the total 55 days, equaling 15 percent of a year, the court awarded the Corps 15 percent of the $221,000 contract price for 2004, or $33,150.00, *see id.,* as "liquidated contract damages," Judgment at 2.

The Town contends that the district court erred in holding it liable for breach of contract "without any findings of whether the alleged breaches of contract by the Ambulance Corps as set forth in Mr. Meyers' letter of February 10, 2004 were valid." (Town brief on appeal at 19.) The Town also argues that the district court improperly ruled that a two-weeks reasonable-notice term was included in the unwritten contract. (*Id.*) We agree that the present record does not support these rulings.

Several principles of New York law may have applicability here. When a party has breached a contract, that breach may excuse the nonbreaching party from further performance if the breach is "material." *See generally Callanan v. Powers,* 199 N.Y. 268, 284, 92 N.E. 747, 752 (1910) ("[Rescission] is not permitted for a slight, casual, or technical breach, but, as a general rule, only for such as are material and willful, or, if not willful, so substantial and fundamental as to strongly tend to defeat the object of the parties in making the contract."); *Frank Felix Associates, Ltd. v. Austin Drugs, Inc.,* 111 F.3d 284, 289 (2d Cir.1997). For a breach to be material, it must "go to the root of the agreement between the parties." *Septembertide Publishing, B.V. v. Stein & Day, Inc.,* 884 F.2d 675, 678 (2d Cir.1989); *see, e.g.,* 23 *Williston on Contracts* § 63:3, at 438–39 (4th ed. 2002) ("[F]or a breach of contract to be material, it must go to the root or essence of the agreement between the parties, or be one which touches the fundamental purpose of the contract and defeats the object of the parties in entering into the contract." (internal quotation marks and footnotes omitted)).

If a breach is only partial, it may entitle the non-breaching party to damages for the breach, but it does not entitle him simply to treat the contract as at an end. *See, e.g., Lovink v. Guilford Mills, Inc.,* 878 F.2d 584, 586 (2d Cir.1989). "The distinction between partial and total breach is particularly important in executory contracts," where the parties are only part-way through a contracted-for period of time. *Id.* "A partial breach by one

party ... does not justify the other party's subsequent failure to perform; both parties may be guilty of breaches, each having a right to damages." 4 *Corbin on Contracts* § 946, at 811 (1951); *see, e.g.,* 23 *Williston on Contracts* § 63:4, at 444 ("[A] slight breach will not end the other party's further duty to perform the contract.").

 Finally, where a valid agreement exists between the parties, an action in quantum meruit to prevent unjust enrichment ordinarily is not available. *See, e.g., Clark–Fitzpatrick, Inc. v. Long Island Rail Road Co.,* 70 N.Y.2d 382, 388, 521 N.Y.S.2d 653, 656, 516 N.E.2d 190 (1987) ("The existence of a valid and enforceable written contract governing a particular subject matter ordinarily precludes recovery in quasi contract for events arising out of the same subject matter."). However, a plaintiff whose breach was not willful and deliberate may, in some instances, recover so much as his efforts have actually benefited the non-breaching party. *Amtorg Trading Corp. v. Miehle Printing Press & Manufacturing Co.,* 206 F.2d 103, 105–07 (2d Cir.1953) (citing 5A *Corbin on Contracts* § 1122); *see also Restatement (Second) of Contracts* § 374(1) (1981) ("[T]he party in breach is entitled to restitution for any benefit that he has conferred by way of part performance or reliance in excess of the loss that he has caused by his own breach."). In the event that the breaching party is entitled to recover on such an unjust enrichment theory, the amount to which he is entitled is measured not by the contract price but rather by "the reasonable value of services rendered." *Longo v. Shore & Reich, Ltd.,* 25 F.3d 94, 97 (2d Cir.1994) (internal quotation marks omitted).

 In the present case, the Town stated that it was terminating the relationship because

[t]he safety and health of this municipality are jeopardized by certain aspects of NWVAC's inability or failure to perform requisite emergency services.

. . . .

In that regard the Town has become aware of the NWVAC failure to meet Advanced Life Support certification and Vehicle and Traffic licensing requirements; failure to control use of emergency vehicles; and failure to field a crew or crews at all times.

(Town Termination Letter.) If the Town's criticisms were valid, it may well be that the Corps was in material breach of its contract with the Town. There were, however, no findings by the district court as to whether in fact the Corps had failed to perform as alleged in the Town Termination Letter. As described in greater detail in Part II.C. below, although the court consolidated the March 4 and 18 hearings to deal with both the Corps's motion for a preliminary injunction and its claims on their merits, the ultimate question that was litigated was only "whether this Court should order the Town to deliver all or some of these things to the plaintiff." (Hearing Transcript, March 4, 2004 ("March 4 Tr."), at 28.) And although an award such as this in a judgment might ordinarily give rise to an inference that the court had at least implicitly found that the plaintiff was not in breach, the record precludes such an inference here. At the first of the hearings, the court stated:

*I understand the issue to be that there are important items,* including vehicles, which are locked up, *which the Town asserts that it has the right to control, and which the plaintiff asserts that it owns* and has the right to use, and wishes to use, as I understand it, to render similar services from a different location.

. . . .

Now, unless I misunderstand the case, *I'm not concerned with whether that decision is a wise one or a justified one.* (*Id.* (emphases added).) Nothing in the record suggests that the court deviated from that view. Indeed, the court reaffirmed that view in its postjudgment order, stating that although Meyers had characterized the Corps's services as "inadequate or unsatisfactory," "it [had] not [been] necessary" for the court "to ascertain whether [Meyers'] judgment in the matter, or that of the Town board, was valid or invalid. The only issue was the improper sequestration and deprivation of the machinery and equipment . . . ." June 8 Order at 2. Consistent with the court's view, the parties had presented evidence at the hearings only with respect to the ownership of the vehicles claimed by the Corps and withheld by the Town. No evidence whatever was presented by either side as to the adequacy or quality of the Corps's performance. And in its April 20 findings of fact, the district court made no finding as to whether the Town's criticisms of the Corps's performance were justified.

Nor did the court make any finding that the parties had agreed that the Town must give two weeks' notice of any termination of the relationship. And although it referred to a "customary" two weeks' notice provision, the court neither made any finding—nor received any evidence—that a requirement for such notice is the prevailing custom in the context of contracts for emergency medical services where a municipality contends, as the Town did in its termination letter here, that a provider's inadequate performance of the requisite emergency services jeopardizes the public's safety and health.

In light of the Town's accusations and the above legal principles, any appropriate resolution of the Corps's contract or unjust enrichment claim required findings as to

several facts, including whether the Corps breached its contract with the Town; whether the Town had a contractual or customary obligation to give the Corps notice before terminating its relationship with the Corps; if both of those questions are answered in the affirmative, whether the breach by the Corps was material, thereby excusing the Town from giving notice before termination; if the Corps breached, whether its breach was willful and deliberate; if its breach was not willful and deliberate, whether, as a matter of equity, the Corps should receive compensation for the benefit that its services conferred on the Town prior to termination; and if there should be such a quantum meruit award, what is the reasonable value of the services rendered.

Without findings on these material factual issues, any award to the Corps on its contract or unjust enrichment claim was at best premature. Accordingly, we vacate so much of the Judgment as awarded the Corps a percentage of the agreed contract price for its past services and awarded it compensation in lieu of notice, and we remand for appropriate proceedings leading to a resolution of these issues. In so doing, we note that the Corps in its complaint demanded a jury trial, and that the district court, in consolidating the preliminary injunction hearing with a hearing on the merits, stated that the consolidation was "without prejudice to anybody's right to a jury trial as to money issues, money damage issues." (March 18 Tr. at 80.)

## C. *The Ambulance Corps's Cross–Appeal*

The Corps has cross-appealed, challenging the district court's posttrial order denying its motion pursuant to Fed.R.Civ.P. 59(a)(2) for a jury trial on the issue of punitive damages. The district court ruled that it lacked jurisdiction to entertain that motion because defendants had filed a no-

tice of appeal from the Judgment, and it stated that if it had jurisdiction, it would deny the motion on grounds of waiver and lack of merit. We disagree with the court's views on jurisdiction and waiver, and we remand for further proceedings with respect to the merits of the request for punitive damages.

 First, given the sequence and timing of the pertinent filings, the district court had jurisdiction to decide the Corps's motion. A motion for a new trial pursuant to Rule 59(a) must be filed "no later than 10 days after entry of the judgment." Fed.R.Civ.P. 59(b). When one or more such motions have been "timely file[d], . . . the time to file an appeal runs for all parties from the entry of the order disposing of the last such remaining motion." Fed. R.App. P. 4(a)(4)(A). If a party files a notice of appeal after judgment has been entered but before the court has disposed of a timely filed Rule 59(a) motion for a new trial, the notice of appeal simply does not "become[ ] effective" before an order disposing of that motion has been entered. Fed. R.App. P. 4(a)(4)(B)(i).

Here, the Judgment was entered on May 10, 2004. The Corps's Rule 59(a) motion was filed on May 14 and hence was timely. The court did not dispose of that motion until June 8. Thus, the Town's notice of appeal, filed on June 4, was not effective before June 8 because the Corps's Rule 59 motion was still pending. When the district court addressed the new-trial motion on June 8, it had jurisdiction to decide that motion.

 Second, we disagree with the district court's view that the Corps had waived its right to a jury trial on the issue of punitive damages. In finding a waiver, the court stated as follows: ·

The lawsuit was tried without a jury, following consolidation of a preliminary injunction motion with trial of the merits pursuant to Fed.R.Civ.P. 65(a). At no time did the Plaintiff, which had an interest in prompt restoration of its property, raise any issue about punitive damages or the appropriateness of the order of this Court consolidating the case for trial. Trial has been had and all that remains is the appeal. It is too late to raise the issue of punitive damages and the point is waived.

June 8 Order at 1–2.

 It is established, however, that a party's "[a]greement to a consolidation of trial on the merits with a hearing for a preliminary injunction by itself in no way amounts to a waiver of the right to jury trial." *Heyman v. Kline*, 456 F.2d 123, 130 (2d Cir.), *cert. denied*, 409 U.S. 847, 93 S.Ct. 53, 34 L.Ed.2d 88 (1972). In *Heyman*, we held that even a party's failure to object to an off-hand remark by the judge characterizing the case as " 'a non jury case,' " *id.* at 128, and stating that he hoped to handle the case himself, did not constitute a waiver of the party's right to a jury trial, *id.* at 128–29.

In the present case, there is even less of a basis than in *Heyman* for finding a waiver. Here, in announcing that it was consolidating the hearing on the preliminary injunction motion with the trial on the merits, the court stated, *inter alia,* that "the Court wants to make clear that its *consolidation is not intended to deprive anybody of the right to a jury determination as to any issues which are not equity in nature.*" (March 18 Tr. at 79 (emphasis added).) The court repeated, "I want to make it clear in doing [the consolidation] that I'm doing it *without prejudice to anybody's right to a jury trial as to money issues, money damage issues.*" (*Id.* at 80 (emphasis added).) The court's June 8 statement that the Corps had waived its right to a jury trial on punitive damages

was thus contradicted by the court's earlier assurances that no party's right to a jury trial on any money damages issues was being impaired. We cannot conclude that the Corps's right to a jury trial on the issue of punitive damages was waived.

Finally, we view the district court's statement that punitive damages were unwarranted on the merits as, at best, premature. Punitive damages may be awarded in a § 1983 action "when the defendant's conduct is shown to be motivated by evil motive or intent, or when it involves reckless or callous indifference to the federally protected rights of others." *Smith v. Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed.2d 632 (1983). To be entitled to an award of punitive damages, a claimant must show a "positive element of conscious wrongdoing." *Kolstad v. American Dental Ass'n*, 527 U.S. 526, 538, 119 S.Ct. 2118, 144 L.Ed.2d 494 (1999) (internal quotation marks omitted). The fact that the constitutional violation does not warrant an award of compensatory damages is not a basis for denying an award of punitive damages. *See, e.g., Robinson v. Cattaraugus County*, 147 F.3d 153, 161 (2d Cir.1998); *King v. Macri*, 993 F.2d 294, 298 (2d Cir.1993); *Stolberg v. Members of Board of Trustees*, 474 F.2d 485, 489 (2d Cir.1973). The district court's determination that punitive damages are unwarranted as a matter of law is reviewed *de novo*. *See, e.g., Farias v. Instructional Systems, Inc.*, 259 F.3d 91, 101 (2d Cir.2001); *Schonfeld v. Hilliard*, 218 F.3d 164, 172 (2d Cir.2000).

In stating that an award of punitive damages to the Corps was not warranted, the district court stated that

the facts of this case, in this Court's opinion, are not sufficiently egregious to warrant the imposition of punitive damages. Punitive damages are allowed against public officials such as defendant Meyers only to punish outrageous conduct.

However wrong-headed, the decision to lock out the Ambulance Corps[ ], Supervisor Meyers' conduct does not rise to the level of justifying punitive damages. He was acting in his capacity as sole commissioner of the Ambulance District, and with the apparent acquiescence of the Town Board of the Town of New Windsor. He had a belief, *apparently* not entirely unsupported by the fact, that the services being rendered by the Ambulance Corp[s] were inadequate or unsatisfactory, or that they threatened to become so. *In order for this Court to resolve the issues presented in the litigation, it was not necessary to ascertain whether his judgment in the matter, or that of the Town Board, was valid or invalid.* The only issue was the improper sequestration and deprivation of the machinery and equipment, almost all of which this Court found to be the property of the Plaintiff.

June 8 Order at 2 (emphases added). In so stating, the district court incorrectly described the scope of "the litigation."

The litigation as a whole was not limited to the ownership of the ambulances and other equipment seized by the Town. The litigation included the Corps's claims for unjust enrichment (Complaint ¶ 38)—discussed in Part II.B. above—and "punitive damages against the individual defendant for his willful and malicious actions" (Complaint ¶ 45). The complaint, on its face, demanded a jury trial. And, as discussed above, the district court stated at the end of the hearing that its consolidation of the preliminary injunction issues with the merits issues was "without prejudice to anybody's right to a jury trial as to money issues, money damage issues." (March 18 Tr. at 80.)

The consolidated hearing, which began barely three weeks after the Town's seizure of the vehicles, was quite limited in scope, focusing on the question of ownership of the vehicles. For example, during the examination of the first witness, the court identified the issue before it as ownership, rather than any issue as to whether the seizure was justified:

> I understand the issue to be that there are important items, including vehicles, which are locked up, which the Town asserts that it has the right to control, and which the plaintiff asserts that it owns and has the right to use, and wishes to use, as I understand it, to render similar services from a different location.
>
> . . . .
>
> Now, unless I misunderstand the case, I'm not concerned with whether that decision is a wise one or a justified one. I have to decide whether this Court should order the Town to deliver all or some of these things to the plaintiff. Because it's apparent, at least, I'm assuming from the documentation, that the Town no longer wishes to continue as in the past, is that correct?
>
> . . . .
>
> MR. DUNN [counsel for the Town]: With the New Windsor Volunteer Ambulance Corps, that's correct. We don't wish to have them provide services to the district.
>
> THE COURT: So it doesn't really matter. The Court doesn't have to adjudicate whether the decision is wise or unwise, or justified or not.
>
> MS ULLRICH [counsel for the Corps]: That's correct, Your Honor. We are here today to present evidence of ownership.

(March 4 Tr. at 28–29 (emphases added).)

Consistent with the court's stated understanding that the issue at the hearing was ownership, the parties, encouraged by the court to stick to that issue, made no apparent effort to present evidence as to whether the seizure of the Corps's property was prompted by a motivation or state of mind on the part of Meyers that could justify an award of punitive damages against him. Accordingly, the factual record was not sufficiently developed for a ruling by the court that an award of punitive damages is unwarranted as a matter of law.

█ Nor could the denial of a trial on the issue of punitive damages be justified by the district court's observation that Meyers "was acting in his capacity as sole commissioner of the Ambulance District, and with the apparent acquiescence of the Town Board of the Town of New Windsor," June 8 Order at 2. Although a municipality itself is immune from a claim for punitive damages, see City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 258–68, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), that immunity does not extend to a municipal official sued in his individual capacity, see, e.g., Smith v. Wade, 461 U.S. at 55–56, 103 S.Ct. 1625. If there were sufficient evidence to permit the factfinder to infer that the responsible official was motivated by malice or evil intent or that he acted with reckless or callous indifference to the federally protected rights of the plaintiff, "the apparent acquiescence" of the municipality would not protect the individual defendant from liability for punitive damages.

In sum, the record makes clear that there was no waiver of the right to a jury trial on the damages issues, and the record remains to be developed as to whether punitive damages are warranted. Accordingly, we vacate the court's denial of the Corps's motion for a new trial on the issue of punitive damages and remand for further proceedings. This remand does not foreclose a new decision that punitive dam-

ages are unwarranted as a matter of law if the further proceedings fail to produce evidence sufficient to meet the standard for an award of such damages.

## CONCLUSION

For the reasons stated above, we affirm so much of the Judgment as (a) ruled that defendants' seizure of ambulances and other property owned by the Corps violated the Corps's right to due process, (b) ordered defendants to release that property to the Corps, and (c) ordered the Town to pay the Corps $56,571.44 as attorneys' fees and costs pursuant to § 1988. We vacate so much of the Judgment as awarded the Corps contract damages, and we vacate the June 8 Order denying the Corps's motion for a jury trial on its claim for punitive damages; as to these issues, we remand for such further proceedings as are appropriate and not inconsistent with this opinion.

No costs.