25 F.3d 90
 18 Employee Benefits Cas. 1252
 Jerome P. BROWN, as Trustee of the New England Health Care
Employees Welfare Fund, Plaintiff-Appellee,
v.
HEALTH CARE AND RETIREMENT CORPORATION OF AMERICA, doing
business as Independence Manor; Meadows Manor;
Park Manor; Meadow Manor, Inc.,
Defendants-Appellants.
 No. 639, Docket 93-7435.
 United States Court of Appeals,
Second Circuit.
 Argued Nov. 15, 1993.
Decided May 24, 1994.
 
 1
 John M. Creane, Milford, CT, for plaintiff-appellee.
 
 
 2
 Leonard L. Scheinholtz, John G. Ferreria, Reed Smith Shaw & McClay, Pittsburgh, PA and Gerald L. Garlick, Leventhal, Krasow & Roos, P.C., Hartford, CT, for defendants-appellants.
 
 
 3
 Before: ALTIMARI and WALKER, Circuit Judges, and OWEN, District Judge.*
 
 OWEN, District Judge:
 
 4
 The New England Health Care Employees Welfare Fund (the "Fund") commenced this action against the Health Care Retirement Corporation of America (HCRC) under the Employee Retirement Income Security Act (ERISA),[1] alleging underpayments by HCRC to the Fund. The Fund obtained summary judgment in the District Court in Connecticut in the amount of $234,061.32 plus $15,281.25 in attorney's fees. HCRC appeals, contending that there exists an issue of material fact regarding the interpretation of the clause of the collective bargaining agreement under which it made contributions to the Fund and a second issue of fact going to its intent in making such contributions.
 
 
 5
 The Fund exists to provide health and welfare benefits to covered employees according to the provisions of Sec. 3(1) of ERISA.[2] It was established pursuant to collective bargaining agreements negotiated between the New England Health Care Employees Union, District 1199, and approximately fifty health care employers in New England, including defendant HCRC which operates three nursing homes in Connecticut. Article 24, Sec. 2 of the said agreements require the employers to contribute to the Fund specified percentages of the "gross payroll of all Employees who work twenty hours per week or more [after the first two months of employment]."
 
 
 6
 Prior to June 1989, it appears that HCRC had erroneously been contributing to the Fund for all its employees, regardless of how many hours the employee worked. However, in that month, HCRC commenced contributing for only those employees who were regularly scheduled to work twenty or more hours per week, regardless of the number of hours actually worked. This, since that time, according to the Fund, has resulted in smaller contributions to the Fund than would have been made had HCRC contributed on the basis of actual work hours of those working twenty hours or more, which, the Fund contends, is the clear intent of the agreement. Accordingly, the Fund commenced this action to recover the deficiencies the Fund claims have accrued.
 
 
 7
 The district court granted summary judgment to the Fund, holding that the collective bargaining agreement unambiguously supported the Fund's reading of the agreement that all employees who actually worked twenty hours or more were entitled to have HCRC contribute to the Fund on their behalf. The district court also held that even though HCRC may have previously made contributions for employees scheduled to work more than twenty hours but who in fact worked less than twenty hours, HCRC was not entitled to set off any such prior overpayments against its present deficiency. On appeal, HCRC argues that summary judgment on the meaning of Article 24, Sec. 2 of the collective bargaining agreement was inappropriate because the provision is ambiguous, and that even if we disagree, remand is necessary so that HCRC can establish and set off its claimed prior overpayments.
 
 
 8
 An award of summary judgment is appropriate only where "... there is no genuine issue as to any material fact and ... the moving party is entitled to a judgment as a matter of law." Fed.R.Civ.P. 56(c). The burden is upon the moving party to demonstrate the absence of a material fact. Fed.R.Civ.P. 56(e). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986). A material fact is one "that might affect the outcome of the suit under the governing law." Id. All inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. Lendino v. Trans Union Credit Information Co., 970 F.2d 1110, 1112 (2d Cir.1992). Accordingly, for there to be an issue of fact here, the contract language, Article 24, Sec. 2, supra, must be ambiguous, necessitating the introduction of extrinsic evidence of intent. Whether or not such an issue exists is a threshold question of law for the court to decide. Brass v. American Film Technologies, Inc., 987 F.2d 142, 149 (2d Cir.1993).
 
 
 9
 HCRC contends that the phrase "Employees who work 20 hours per week or more" can reasonably be read to mean prospectively--that is, scheduled to work. To support this, HCRC contends that this construction is supported by Article 1 of the collective bargaining agreement, which states:
 
 
 10
 The words "full-time Employee" mean an employee regularly and normally scheduled to work forty (40) hours or more per week. The words "part-time Employee" mean an Employee regularly and normally scheduled to work less than forty (40) hours per week, but who works an average of at least thirteen (13) hours per week.
 
 
 11
 But this definition has nothing to do with those for whom payment is due the Fund who are independently defined in Article 24, and there, of course, there is only one relevant benchmark, and it is twenty hours or more work per week from the payroll. Indeed, contrary to HCRC's position, the specific language in Article 1 of the agreement above demonstrates that when the parties intended to draw a distinction based on how many hours employees were scheduled to work, they did so explicitly.
 
 
 12
 We note that HCRC is the only employer of the many who are parties to the collective bargaining agreement that has asserted this construction of the agreement. Every other employer has at all times calculated its contributions due the Fund using the number of hours an employee actually worked. The industry's uniform construction of this clause to the contrary of HCRC is, in the collective bargaining agreement setting, to be given evidentiary significance by the Courts, and we do. See United Steelworkers of America v. Warrior & Gulf Navigation Co., 363 U.S. 574, 580-81, 80 S.Ct. 1347, 1352-53, 4 L.Ed.2d 1409 (1960).
 
 
 13
 Accordingly, we hold that Article 24, Sec. 2 of the collective bargaining agreement is unambiguous in requiring an employer to contribute to the Fund for those employees who actually work twenty hours or more a week, not those merely scheduled to so work.[3]
 
 
 14
 Given this holding, HCRC, asserting federal common law rights, alternatively seeks a remand to permit it to set off overpayments it claims to have made since June 1989 against the payments the District Court's judgment orders it to make. These overpayments would consist of amounts contributed for employees who were scheduled to work more than twenty hours per week but who actually worked fewer than twenty hours. HCRC asserts those overpayments to be in excess of $75,000.
 
 
 15
 In this Circuit, however, Frank L. Ciminelli Const. Co. v. Buffalo Laborers Supplemental Unemployment Benefit Fund, 976 F.2d 834 (2d Cir.1992), and Dumac Forestry Serv., Inc. v. International Brotherhood of Electrical Workers, 814 F.2d 79 (2d Cir.1987), govern a claim to recover an overpayment, not federal common law. Those cases stand for the proposition that while ERISA does not require a fund to refund overpayments, the fund is permitted to do so in accordance with its own policy. This logically flows from the special status accorded funds' assets by ERISA, 29 U.S.C. Sec. 1103(c)(1), which states in part:
 
 
 16
 Except as provided in [subsection 2], the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purpose[ ] of providing benefits to participants in the plan....
 
 
 17
 HCRC, however, expressly disclaims any reliance on Ciminelli and Dumac, contending instead that it is not endeavoring under ERISA to recover payments which have become assets of the Fund, but rather is seeking to set off amounts overpaid against monies yet to be paid and therefore not yet assets of the Fund. Thus, HCRC argues, general federal common law equitable principles, rather than ERISA's provisions, should apply. See, e.g., Kwatcher v. Massachusetts Serv. Employees Pension Fund, 879 F.2d 957, 965-67 (1st Cir.1989).
 
 
 18
 We cannot accept HCRC's purported distinction between a claim for a refund of mistaken overpayments and the assertion of a setoff against a fund's claim to collect delinquent payments. The common law right asserted by HCRC is equally in derogation of the principle that funds of an ERISA plan must never inure to the benefit of the employer. See Ciminelli, 976 F.2d at 834; Amato v. Western Union Int'l, Inc., 773 F.2d 1402, 1419 (2d Cir.1985), cert. dismissed, 474 U.S. 1113, 106 S.Ct. 1167, 89 L.Ed.2d 288 (1986). As the Court in Dumac noted, 814 F.2d at 82:the statute [ERISA] neither commands nor precludes the payment of refunds; "it merely permits the return of contributions mistakenly made." ... The statute "does not say that payments made under a mistake of fact necessarily will be returned." (Citations omitted; emphasis in original.)
 
 
 19
 Thus, a refund in excess of the fund's refund policy "cannot be awarded unless supported by a determination that the refund policy is arbitrary or capricious." Id. Further, even where the refund policy is arbitrary or capricious, the employer must still establish that the equities favor restitution.[4] Id. at 83.
 
 
 20
 We see no reason why HCRC, the employer here, which was delinquent in its payments, should be in a better position than the employer in Dumac, which was not delinquent but had only made erroneous overpayments, simply because it is seeking an offset as opposed to restitution. If anything, an employer who forces a fund to bring suit for delinquent payments has an even less compelling position than the employer with clean hands who seeks a refund. Yet the latter is still provided with only the limited relief allowed under ERISA, 29 U.S.C. Sec. 1103(c)(2).
 
 
 21
 Given this, we decline HCRC's invitation to recognize a separate right to setoff under federal common law in addition to the rights provided employers under ERISA. This conclusion does not create the inequitable windfall HCRC suggests. Clearly, the Fund, in the interim, has provided coverage to those employees for whom HCRC claims it has mistakenly contributed, and perhaps in some cases disbursements to some of those employees may have been in excess of the contributions received by the Fund in their names.
 
 
 22
 Accordingly, we extend the requirements of Dumac and Ciminelli to an employer asserting a setoff. Thus, HCRC was required to show that the Fund's refund policy was arbitrary and capricious, that the equities favored restitution, and what the effect of the setoff was upon individual beneficiaries to whom the Fund had incurred and discharged financial responsibilities by reason of the overpayments. HCRC made no attempt below to meet these requirements. Its mere conclusory statement that it overpaid in excess of $75,000 on behalf of certain of its employees did not meet these tests, and its claim therefore fails. Ciminelli, 976 F.2d at 836. Thus, there is nothing before us which requires remand.
 
 
 23
 The judgment below is affirmed.
 
 
 
 *
 The Honorable Richard Owen, United States District Judge for the Southern District of New York, sitting by designation
 
 
 [1]
 The relevant provision, 29 U.S.C. Sec. 1145, reads:
 Every employer who is obligated to make contributions to a multi-employer plan under ... the terms of a collectively bargained agreement shall ... make such contributions in accordance with the terms and conditions of ... such agreement.
 
 
 [2]
 29 U.S.C. Sec. 1002(1)
 
 
 [3]
 HCRC, as we observed, has also asserted an issue of fact going to its intent, based on the affidavit of its manager of employee benefits, to the effect that she told the Fund manager that HCRC would be changing the method of calculating contributions and he did not object thereto. (This conversation was denied by the Fund manager in his affidavit below.)
 Noting that the Fund is a third-party beneficiary of a multi-employer collective bargaining agreement providing on-going protection for many employees of many employers, such an agreement not only has special status in the law, see, United Steelworkers of America v. Warrior & Gulf Navigation Co., supra, and Lewis v. Benedict Coal Corp., 361 U.S. 459, 468-69, 80 S.Ct. 489, 495, 4 L.Ed.2d 442 (1960), but may not be varied, as HCRC concedes, by an oral declaration of a single employer to the non-party fund manager, and, given our holding that the requirements for contribution are unambiguous, HCRC's contention regarding its intent is irrelevant.
 
 
 [4]
 The fund administrators are in the best position to determine whether the equities of a particular case require a refund or setoff, as opposed to courts making that determination under the rubric of a purported federal common law right to restitution or setoff. We therefore leave such decisions to those vested in the first instance by ERISA with the authority and responsibility to make them