10-1859-cv
Welfare Fund v. Bidwell Care Ctr., LLC

## UNITED STATES COURT OF APPEALS
## FOR THE SECOND CIRCUIT

## SUMMARY ORDER

**RULINGS BY SUMMARY ORDER DO NOT HAVE PRECEDENTIAL EFFECT. CITATION TO A SUMMARY ORDER FILED ON OR AFTER JANUARY 1, 2007, IS PERMITTED AND IS GOVERNED BY FEDERAL RULE OF APPELLATE PROCEDURE 32.1 AND THIS COURT'S LOCAL RULE 32.1.1. WHEN CITING A SUMMARY ORDER IN A DOCUMENT FILED WITH THIS COURT, A PARTY MUST CITE EITHER THE FEDERAL APPENDIX OR AN ELECTRONIC DATABASE (WITH THE NOTATION "SUMMARY ORDER"). A PARTY CITING A SUMMARY ORDER MUST SERVE A COPY OF IT ON ANY PARTY NOT REPRESENTED BY COUNSEL.**

At a stated term of the United States Court of Appeals for the Second Circuit, held at the Daniel Patrick Moynihan United States Courthouse, 500 Pearl Street, in the City of New York, on the 6th day of April, two thousand eleven.

PRESENT: PIERRE N. LEVAL,
REENA RAGGI,
PETER W. HALL,
     *Circuit Judges.*

--------------------------------------------------------------------------------------

WELFARE FUND, NEW ENGLAND HEALTH CARE EMPLOYEES,
PENSION FUND, NEW ENGLAND HEALTHCARE EMPLOYEES,
    *Plaintiffs - Counter-Defendants - Appellees*,

    v.           No. 10-1859-cv

BIDWELL CARE CENTER, LLC, iCARE MANAGEMENT, LLC,
CHELSEA PLACE CARE CENTER, LLC, TRINITY HILL CARE
CENTER, LLC, WINTONBURY CARE CENTER, LLC,
FARMINGTON CARE CENTER, LLC, MERIDEN CARE CENTER,
LLC, a.k.a. SILVER SPRINGS CARE CENTER, WESTSIDE CARE
CENTER, LLC, KETTLE BROOK CARE CENTER, LLC,
    *Defendants - Counter-Claimants - Appellants*.[*]

--------------------------------------------------------------------------------------

APPEARING FOR APPELLANTS:  JONATHAN M. STARBLE, Starble & Harris, LLC, Avon, Connecticut.

APPEARING FOR APPELLEES:  JOHN M. CREANE (Michael E. Passero, *on the*

---

[*] The Clerk of the Court is directed to amend the caption to read as shown above.

*brief*), Law Firm of John M. Creane, Milford, Connecticut.

Appeal from the United States District Court for the District of Connecticut (Joan Glazer Margolis, *Magistrate Judge*).

UPON DUE CONSIDERATION, IT IS HEREBY ORDERED, ADJUDGED, AND DECREED that the judgment of the magistrate judge entered on January 19, 2010, is AFFIRMED.

Defendants appeal from a judgment entered after a bench trial in favor of plaintiffs New England Health Care Employees Welfare Fund ("Welfare Fund") and New England Health Care Employees Pension Fund ("Pension Fund") awarding damages for delinquent Employee Retirement Income Security Act ("ERISA") contributions and denying defendants' related counter-claim for alleged overpayments. See 29 U.S.C. § 1145. Defendants also appeal the magistrate judge's failure to apply judicial estoppel against plaintiffs based on positions taken in previous litigations.[1] We assume the parties' familiarity with the facts and record of prior proceedings, which we reference only as necessary to explain our decision to affirm.

---

[1] Plaintiffs do not appeal that portion of the judgment granting defendants a refund for separate Family Medical Leave Act overpayments. Nor do defendants appeal the judgment in favor of plaintiffs on defendants' defamation counterclaim. As a result, we do not consider those claims.

1.    ERISA

The Collective Bargaining Agreements ("CBAs") require defendants to contribute to the Pension and Welfare Funds a certain percentage "of the gross payroll for [e]mployees in the bargaining unit who regularly work an average of twenty (20) or more hours per week . . . . Said contributions shall be calculated in accordance with the Fund's contribution policies."   Chelsea Place/Trinity Hill/Wintonbury ("i-3") CBA at 40; i-3 Side Letter at 2; Farmington/Meriden/Westside/Bidwell ("i-4") CBA at 31-34; Kettle Brook CBA at 37. Defendants submit that the magistrate judge erred in failing to recognize the plain meaning of "work . . . hours" as hours in which the employee was present at the worksite, instead deeming the term ambiguous and construing it, on the total record, to reach all hours for which an employee was paid, including vacation leave and sick time.  We review de novo the magistrate judge's legal conclusions, including whether a contract term is ambiguous, but we defer to her factual findings, such as the interpretation of an ambiguous provision, unless clearly erroneous.  See District Lodge 26, Int'l Ass'n of Machinists & Aerospace Workers v. United Techs. Corp., 610 F.3d 44, 54 (2d Cir. 2010); Arch Ins. Co. v. Precision Stone, Inc., 584 F.3d 33, 38-39 (2d Cir. 2009).

As an initial matter, defendants fault the magistrate judge for relying on extrinsic evidence of defendants' and other employers' past practices as the basis for her identification of ambiguity.  See Aeronautical Indus. Dist. Lodge 91 v. United Techs. Corp., 230 F.3d 569, 576 (2d Cir. 2000) (holding that courts may "look to extrinsic factors" only "when provisions are ambiguous").  We do not agree with defendants' reading of the magistrate judge's

3

opinion, which also pointed to various contract provisions in identifying ambiguity. See

Gibbs v. CIGNA Corp., 440 F.3d 571, 578-79 (2d Cir. 2006) (recognizing that contract

provisions must be construed in "context of the entire integrated agreement" as objectively

viewed by a "reasonably intelligent person"). In any event, we may "affirm the district

court's judgment on any ground appearing in the record." ACEquip Ltd. v. Am. Eng'g

Corp., 315 F.3d 151, 155 (2d Cir. 2003).

The CBAs do not explain how employers should determine who "regularly work[s]

an average of twenty" hours or more per week.[2] Instead, they explicitly instruct that the

calculations "shall be . . . in accordance with the Fund's contribution policies." i-3 CBA at

40; i-3 Side Letter at 2; i-4 CBA at 32, 34; Kettle Brook CBA at 37. These policies provide

that "[i]f the CBA excludes employees working less than a specified number of hours per

week," employers must contribute for employees who meet the "minimum number of hours,"

---

[2] After reviewing the parties' requested supplemental briefs, we are not persuaded by defendants' assertion that side letters signed as part of a settlement of prior litigation involving some of the parties in the instant matter clarify the minimum-hour calculation. The settlement agreement and side letters provide that for the 2005 i-3 CBA, "the Employers shall not be responsible for" contributing "for employees who work less than an average of 20 hours per week." Settlement Agreement at 2 (emphasis added); Side Letter Agreement at 1. Although this language was incorporated into the 2005 CBA, it does not expressly modify the operative minimum-hour provision, which appeared in an earlier side letter dated July 11, 2005, using language identical to the other CBAs at issue: employers shall contribute for employees "who regularly work an average of twenty (20) or more hours per week." i-3 Side Letter at 2 (emphasis added). Despite removing the word "regularly" from the minimum-hour requirement, the letters and settlement agreement do not explain whether employers should calculate contributions based on actual or paid hours. Indeed, defendants admit that the work versus paid hour dispute was never at issue during the settlement and that they continued to contribute based on paid hours for several years after the settlement.

4

or average that number in the reporting period, or meet that number in the majority of weeks in a payroll period. Welfare Fund Contribution Policy at 4 (emphasis added); Pension Fund Contribution Policy at 3 (emphasis added). As an example of how to identify who meets the minimum hours requirement, the contribution policies explain that for a four-week reporting period "all employees that had at least eighty (80) paid hours for that period or twenty (20) or more hours in three (3) of the four (4) weeks must be included." Welfare Fund Contribution Policy at 4 (emphasis added); Pension Fund Contribution Policy at 3 (emphasis added). Thus, the plain language of the contribution policies, specifically referenced in the CBAs, includes all paid hours in calculating the twenty-hour minimum. Even assuming that defendants' interpretation is also reasonable, the work-hour provision would be ambiguous because it is "susceptible to more than one reasonable interpretation." District Lodge 26, Int'l Ass'n of Machinists & Aerospace Workers v. United Techs. Corp., 610 F.3d at 54 (internal quotation marks omitted).[3]

Relying on La Barbera v. J.D. Collyer Equipment Co., 337 F.3d 132 (2d Cir. 2003), and New York State Teamsters Conference Pension & Retirement Fund v. United Parcel

_____

[3] Brown v. Health Care & Retirement Corp. of America, 25 F.3d 90 (2d Cir. 1994), on which defendants rely, does not require a different result. In that case, some of the defendant-employers in the current matter asserted that the twenty-hour requirement was based on employees "regularly scheduled to work twenty or more hours per week." Id. at 92 (emphasis in original). In rejecting that argument, we stated that the CBA required employers to contribute "for those employees who actually work twenty hours a week." Id. at 93. Although we used the term "actually work," we did so only to differentiate work from scheduled work, without ever considering whether the twenty-hour minimum should be calculated based on physical work hours or paid work hours. Id. Accordingly, our use of the phrase "actually work" in that case is not dispositive of the issue presented here.

Service, Inc., 382 F.3d 272 (2d Cir. 2004), defendants urge us to ignore the contribution policies' explicit reference to "paid hours" because the Welfare and Pension Funds' creation documents do not provide authority to bind defendants with rules superseding the CBAs. Those cases, however, are easily distinguishable. In La Barbera, we held that trustees could not "substitute an automatic and draconian levy" in place of rules "set out in the collective bargaining agreements" because their powers are "derived from, and limited by" ERISA, the CBAs, and the trust agreements, none of which provided authority to abandon CBA standards. 337 F.3d at 136-38 (concluding that trustees' power to enforce work-hour eligibility requirements did not permit rule abandoning link between eligibility and hours). Similarly, we noted in New York Teamsters Conference Pension & Retirement Fund that trust agreements conferring authority on trustees to "adopt rules and regulations" did not provide power to "supersede the written terms of CBAs." 382 F.3d at 279-81. Unlike in those two cases, where trust documents contained a general rule-making provision, the fund creation documents here state that employers shall contribute according to the CBAs, and the CBAs, in turn, explicitly instruct that payments must be calculated in accordance with the contribution policies. Moreover, contrary to defendants' assertions, the contribution policies' explanation of how to determine who regularly works an average of twenty hours per week does not necessarily contradict the CBAs. Rather, the policies provide eligibility instructions where the CBAs provide no clear guidance. Indeed, as plaintiffs point out, defendants are willing to accept the policies' averaging method and definition of gross payroll.

6

Accordingly, we identify no reason to reject the contribution policies' instruction to include all paid hours.[4]

Defendants also argue that if the parties intended to use "gross payroll" or "paid hours" to calculate the hours requirement, they could have specified those terms, especially when "gross payroll" is used in the twenty-hour provisions. We agree that the CBAs' use of "gross payroll," which includes paid hours, supports defendants' interpretation by demonstrating that "when the parties intended to draw a distinction" between worked or paid hours, "they did so explicitly." See Brown v. Health Care & Ret. Corp. of Am., 25 F.3d at 92-93; see also Werbungs Und Commerz Union Austalt v. Collectors' Guild, Ltd., 930 F.2d 1021, 1026 (2d Cir. 1991) (concluding that assignment of interest in "editions" was ambiguous when incorporated contract referred to "editions and illustrations" because parties knew how to include expressly "illustrations"). Plaintiffs' interpretation, however, draws support from the CBAs' text for the same reason. The CBAs instruct that vacation pay shall be computed based on hours or time "actually worked," but that certain absences are considered "time worked" for determining vacation. i-3 CBA at 27-28; i-4 CBA at 22-23; Kettle Brook CBA at 24-25. Thus, the parties also knew how to distinguish expressly

_____

[4] Nor are we persuaded by defendants' contention that the policies are irrelevant because they were amended on November 20, 2008, the day defendants sent notices to employees warning of the calculation change. Whether the prior contribution policies differed from the amended version is a question of fact reviewed for clear error. See New Windsor Volunteer Ambulance Corps, Inc. v. Meyers, 442 F.3d 101, 111 (2d Cir. 2006) (noting that "existence and terms" of a contract are questions of fact). We identify no such clear error in the magistrate's judge conclusion that the operative language was unchanged when defendants stipulated to the relevance of the contribution policies for purposes of admission and provided no evidence of a differing version.

7

between hours "actually worked" and paid hours, and sometimes counted unworked absences as time worked. Considering the conflicting usage of "work," "actually worked," and "gross payroll," and the contribution policies' reference to paid hours, we agree with the magistrate judge that the twenty-hour minimum provision is ambiguous.

Because defendants do not here contest the magistrate judge's factual determination interpreting the ambiguous provision as including paid hours, they have forfeited any such arguments. See, e.g., Nationwide Mut. Ins. Co. v. Mortensen, 606 F.3d 22, 28-29 (2d Cir. 2010). In any event, we identify no clear error in that conclusion where the evidence showed that defendants included paid hours in determining contribution eligibility for ten years and all other employers followed the same practice.

2.    Judicial Estoppel

Defendants assert that the magistrate judge erred in not applying judicial estoppel against plaintiffs for successfully arguing in Brown v. Health Care & Retirement Corp. of America that the twenty-hour minimum was based on actual work hours instead of regularly scheduled hours.[5] See 25 F.3d at 92. Reviewing the question de novo, we identify no error. See Uzdavines v. Weeks Marine, Inc., 418 F.3d 138, 143 (2d Cir. 2005).[6]

---

[5] Because, as already discussed, we agree with defendants that past practice does not create an ambiguity, we need not address their argument that plaintiffs should be judicially estopped from arguing otherwise.

[6] Because we identify no error on de novo review, we need not conclusively decide the review standard for a denial of judicial estoppel, an open question in this court, see, e.g., DeRosa v. Nat'l Envelope Corp., 595 F.3d 99, 103-05 (2d Cir. 2010) (vacating district court's application of judicial estoppel without clarifying standard of review); Uzdavines v. Weeks Marine Inc., 418 F.3d at 143 (using de novo standard without discussion), but one that some of our sister circuits have resolved in favor of abuse-of-discretion review, see, e.g.,

To invoke judicial estoppel, defendants must show that (1) plaintiffs adopted a factual position "clearly inconsistent with [their] earlier position"; (2) the prior position was "adopted in some way by the court in the earlier proceeding"; and (3) plaintiffs would "derive an unfair advantage" against defendants in asserting the inconsistent statements. DeRosa v. Nat'l Envelope Corp., 595 F.3d 99, 103 (2d Cir. 2010) (internal quotation marks omitted); see also New Hampshire v. Maine, 532 U.S. 742, 749 (2001) (noting that party may not maintain "contrary position" to position taken in prior proceeding if change prejudices party who "acquiesced in the [former] position"). We limit judicial estoppel to where "the risk of inconsistent results with its impact on judicial integrity is certain." DeRosa v. Nat'l Envelope Corp., 595 F.3d at 103 (internal quotation marks omitted).

Even assuming that plaintiffs' prior positions on the ambiguity of the minimum-hour provision were factual (as opposed to legal), which is not clear, judicial estoppel does not apply because there is no clear inconsistency between the positions. In the prior litigation, plaintiffs, like the district court, used the term "actual work" to argue that the twenty-hour requirement was not calculated based on scheduled hours. Brown v. Health Care & Ret. Corp. of Am., 25 F.3d at 92. Plaintiffs never asserted that the minimum-hour provision does not include all paid hours or only includes hours physically worked. See DeRosa v. Nat'l Envelope Corp., 595 F.3d at 104 (vacating application of judicial estoppel when "context of the statements" showed they were "reconcilable"). Accordingly, we affirm the magistrate judge's denial of judicial estoppel.

---

Capella Univ., Inc. v. Exec. Risk Specialty Ins. Co., 617 F.3d 1040, 1051 (8th Cir. 2010); Global NAPs, Inc. v. Verizon New Eng. Inc., 603 F.3d 71, 89 (1st Cir. 2010).

9

We have considered defendants' remaining arguments on appeal and conclude that they are without merit. For the foregoing reasons, the judgment of the magistrate judge is AFFIRMED.

FOR THE COURT:
CATHERINE O'HAGAN WOLFE, Clerk of Court